UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| TIMOTHY DAVID MCCARTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:21-CV-36-JEM |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

This case is before the Court pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 13]. Now before the Court are Plaintiff's Motion for Summary Judgment [Doc. 14] and Defendant's Motion for Summary Judgment [Doc. 18]. Timothy David McCarty ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

**I. PROCEDURAL HISTORY**

On September 26, 2018, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on April 1, 2018 [Tr. 50, 168–71]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ [Tr. 75–78, 82–85]. A

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

telephonic hearing was held on May 29, 2020 [Tr. 28–49]. On July 1, 2020, the ALJ found that Plaintiff was not disabled [Tr. 12–20]. The Appeals Council denied Plaintiff's request for review on December 31, 2020 [Tr. 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on February 22, 2021, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2. The claimant has not engaged in substantial gainful activity since April 1, 2018, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: vertigo, fibromyalgia, and carpal tunnel syndrome (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can frequently climb ramps and/or stairs, but can never climb ladders, ropes, or scaffolds. He should avoid all exposure to unprotected heights, moving mechanical parts, and other workplace hazards, and his handling and fingering is limited to frequently in the bilateral upper extremities.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

> 7. The claimant was born on October 6, 1959 and was 58 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2018, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 14–20].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

"based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e). An RFC is the most a claimant can do despite his limitations. *Id.* § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff contends the ALJ failed to appropriately consider Plaintiff's subjective allegations of his disabling limitations when formulating the RFC. Specifically, Plaintiff argues the ALJ improperly evaluated the reviewing state agency opinion of Thomas Thrush, M.D. ("Dr. Thrush"), as well as the other factors under SSR 16-3p. Plaintiff asserts that, had the ALJ appropriately evaluated his subjective allegations, he would have been found to be disabled and that such a finding is consistent with Dr. Thrush's opinion and other evidence in the record. In addition, Plaintiff argues the RFC finding is inconsistent with the ability to perform other work in significant numbers in the national economy. Plaintiff submits these errors leave the ALJ's decision unsupported by substantial evidence, and he requests the final decision of the Commissioner be reversed and an immediate award of benefits be entered in this case. Alternatively, Plaintiff requests his case be remanded for further proceedings and proper adjudication. The Commissioner argues that the ALJ properly considered the record as a whole when formulating Plaintiff's RFC and that substantial evidence exists to support the ALJ's decision.

The Court finds the ALJ appropriately evaluated Plaintiff's subjective allegations of disabling limitations, properly formulated the RFC, and met his burden to prove Plaintiff is capable of performing other work existing in significant numbers in the national economy. Furthermore, substantial evidence exists to support the ALJ's evaluation of Plaintiff's disability claim.

A.  **ALJ's Evaluation of Plaintiff's Subjective Allegations**

Plaintiff contends the ALJ improperly evaluated his subjective allegations of disabling limitations, rendering the ALJ's decision unsupported by substantial evidence. In his decision, the ALJ found Plaintiff's

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]

[Tr. 16].

As a threshold matter, a claimant's subjective complaints are but one of many factors an ALJ is to consider when making the RFC finding. *See* 20 C.F.R. § 404.1545(a)(3). When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 20 C.F.R. § 404.1529(c)(3):

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citing *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). In addition,

> [t]he social security regulations establish a two-step process for evaluating pain . . . . In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain.

*Chopka v. Saul*, No. 5:18CV945, 2019 WL 4039124, at *6 (N.D. Ohio Aug. 27, 2019).

The Social Security Administration has clarified "that subjective symptom evaluation is not an examination of an individual's character . . . ." SSR 16-3p, 2017 WL 5180304, *2 (S.S.A. Oct. 25, 2017) (effective March 28, 2016); *see Davis v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-117, 2020 WL 3026235, at *6 (S.D. Ohio June 5, 2020), *report and recommendation adopted sub nom.,* No. 3:19-CV-117, 2020 WL 6273393 (S.D. Ohio Oct. 26, 2020) (discussing SSR 16-3p). When evaluating a claimant's subjective complaints, the Social Security Administration "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them." SSR 16-3p.

The ALJ must consider certain factors when evaluating a claimant's alleged symptoms, including complaints of pain. Those factors are:

(i) the claimant's daily activities;

(ii) the location, duration, frequency, and intensity of the pain or other symptoms;

(iii) precipitating and aggravating factors;

> (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;
>
> (v) treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;
>
> (vi) any measures the claimant takes or has taken to relieve the pain or other symptoms; and
>
> (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529. The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

An ALJ's determination as to a claimant's credibility regarding statements concerning his symptoms is to be afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)). *See also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *Barber v. Kijakazi*, No. 1:20-0064, 2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022), *report and recommendation adopted*, 2022 WL 853208 (M.D. Tenn. Mar. 22, 2022) (explaining that although the Commissioner removed the term "credibility" when SSR 16-3p was implemented, "there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations" has been abrogated (citation omitted)). Factual

determinations are the domain of the ALJ, and "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

The Court finds that substantial evidence exists to support the ALJ's decision. The ALJ properly considered, among other things, the medical opinions, the treatment Plaintiff received for his alleged impairments, the objective medical evidence, and inconsistencies within the record.

    1.    *Medical Opinions*

Because Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's ("SSA") new regulations for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a).

The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements.

20 C.F.R. §§ 404.1520(a), (c)(1)–(5). However, supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

Moreover, the revised regulations have set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;
>
> **(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;
>
> **(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)–(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *11 (E.D. Tenn. Mar. 11, 2021).

11

The ALJ simultaneously articulated how he considered the opinions of Dr. Thrush and Joseph Curtsinger, M.D. ("Dr. Curtsinger"), state agency medical consultants [Tr. 18].[2] The ALJ found their opinions to be unpersuasive, stating:

> [Drs. Thrush and Curtsinger] found that [Plaintiff] has no severe impairments despite objective testing and clinical presentations showing otherwise. Their assessment is not consistent with the evidence, including and especially evidence submitted after their review.

[*Id.*].

Plaintiff contends the ALJ failed to appropriately evaluate Dr. Thrush's reviewing source opinion. In January 2019, Dr. Thrush reviewed Plaintiff's medical records and opined that Plaintiff could perform work at all exertional levels with occasional balancing and no climbing of ladders, ropes, or scaffolds [Tr. 58]. Dr. Thrush further opined that Plaintiff must avoid moderate exposure to hazards [Tr. 59]. Plaintiff argues the ALJ should have included Dr. Thrush's occasional balancing limitation for Plaintiff in the final RFC but failed to do so. Plaintiff takes issue with the ALJ's decision to disregard Dr. Thrush's opinion due in part to the fact he found no severe impairments; however, this appears to be an inaccurate statement. Dr. Thrush found Plaintiff had the severe impairment of "Vertiginous Syndromes and Other Disorders of Vestibular System" in addition to the balancing limitation [*Id.* (citing [Tr. 18])]. Plaintiff asserts this error establishes that the ALJ failed to properly evaluate Dr. Thrush's opinion, meaning the ALJ has not met his step five burden to identify other work Plaintiff could perform.

The Commissioner acknowledges the ALJ incorrectly stated that Dr. Thrush found Plaintiff had no severe limitations, as Dr. Thrush found that Plaintiff had a severe impairment that imposed

---

[2] Plaintiff does not claim the ALJ improperly evaluated Dr. Curtsinger's reviewing source opinion. Dr. Curtsinger opined that Plaintiff did not have a severe impairment [Tr. 68–69].

some postural and environmental limitations [Doc. 19 p. 11]. However, the Commissioner notes the ALJ incorporated Dr. Thrush's climbing and environmental limitations into the RFC [Tr. 15, 58–59]. The Commissioner therefore argues that while the ALJ omitted a limitation to occasional balancing in Plaintiff's RFC, such a limitation would not have altered the ALJ's decision.

The Court agrees with the Commissioner. The ALJ found Plaintiff was not disabled because he could perform work as an industrial cleaner and a cafeteria helper [Tr. 19, 47–48], and neither of those occupations require more than occasional balancing. *See Dictionary of Occupational Titles* ("DOT"), 1991 WL 673258, 1991 WL 672696. Remand is therefore not warranted to include an additional balancing limitation into the RFC, and the ALJ's statement is no more than harmless error.

Furthermore, the Court finds the ALJ appropriately considered the 20 C.F.R. § 404.1520c factors when evaluating Dr. Thrush's opinion. The ALJ spoke directly to the consistency factor, stating the state agency consultants' opinions were "not consistent with the evidence, including and especially evidence submitted after their review" [Tr. 18]. 20 C.F.R. § 404.1520c(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be."); *see also Id.* § 404.1520c(5) ("[N]ew evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive."). And while the ALJ did not explicitly use the term "supportability" in his assessment of Dr. Thrush's opinion, it is apparent from the ALJ's discussion that he did not find it to have adequate supportability. 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to

13

support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be."). Despite the ALJ incorrectly stating Dr. Thrush found no severe impairments, the ALJ found that Dr. Thrush still overstated Plaintiff's capabilities due to "objective testing and clinical presentations." [Tr. 18]. In addition, the ALJ noted that Dr. Thrush was not privy to new evidence submitted after Dr. Thrush reviewed Plaintiff's medical record and issued his opinion [*Id.*]. The Court finds this also serves as a valid critique of the supportability of Dr. Thrush's opinion.

In sum, the Court finds the ALJ appropriately evaluated Dr. Thrush's opinion, as he adequately articulated how he considered the § 404.1520c factors of supportability and consistency. It was therefore appropriate for the ALJ to rely on the opinion evidence as part of his evaluation of Plaintiff's subjective allegations of disabling limitations. The ALJ's incorrect statement that Dr. Thrush's opinion did not include any severe limitations does not warrant remand, as an additional severe limitation of occasional balancing would not alter Plaintiff's ability to perform work as an industrial cleaner or cafeteria helper.

2. *Plaintiff's Treatment for His Alleged Impairments*

The ALJ considered the treatment Plaintiff received for his alleged impairments [Tr. 16–18]. The ALJ noted Plaintiff underwent vestibular rehabilitation to treat his vertigo, and Plaintiff's impairment improved as a result of that treatment [Tr. 17–18, 314, 322, 364, 459]. *See Smith v. Comm'r of Soc. Sec. Admin*. 564 F. App'x 758, 763 (6th Cir. 2014) (improvement with use of prescription medication supports denial of disability benefits); *Hardaway v. Secretary*, 823 F.2d 922, 927 (6th Cir. 1987) (evidence that medical issues can be improved when using prescribed drugs supports denial of disability benefits). The ALJ considered that Plaintiff "self-reported that

14

his vertigo was resolved for two years during the relevant period and followed by indicating that such showed good response to treatment." [Tr. 18; *see also* Tr. 492, 496].

Plaintiff also had bilateral carpal tunnel releases in August and September 2018, and Plaintiff indicated he improved following the surgeries [Tr. 381, 391–92, 395, 398]. And Plaintiff declined a splint to treat his carpal tunnel syndrome symptoms in July 2019 [Tr. 461]. As to his fibromyalgia, Plaintiff's doctors recommended physical therapy and increased physical activity, which the ALJ considered [Tr. 17, 410–11]. The ALJ therefore appropriately relied on Plaintiff's treatment for his impairments in assessing the subjective allegations.

3. *Objective Medical Evidence*

The ALJ considered the objective medical evidence and found it largely supported a finding that Plaintiff was not disabled, contrary to the subjective allegations [Tr. 16–18]. Plaintiff was noted to have normal gait and station on physical exam, normal ranges of motion, full strength, intact sensation, intact reflexes, and normal coordination [Tr. 323–324, 356, 366, 369, 371, 383, 386, 409, 414, 460–61, 463–64, 474, 493, 497]. Plaintiff's reports of pain were not reproduced on examination, and Plaintiff routinely appeared to not be in acute distress [Tr. 323, 365, 382, 386, 389, 396, 409–10, 460, 493]. The Court finds the ALJ adequately reviewed the medical record and appropriately relied on it in his decision.

4. *Inconsistencies within the Record*

The Court finds the ALJ properly considered the inconsistencies in the record as part of his analysis of Plaintiff's subjective allegations. Plaintiff alleged a disability onset date of April 1, 2018; however, the ALJ noted Plaintiff had been dismissed from his job due to alcoholism despite Plaintiff indicating he had lost his position due to a reduction in the work force [Tr. 16, 200, 326, 328]. In any case, Plaintiff continued to perform "odd jobs" following the reduction in the work

15

force, and he was able to attend to his personal needs, drive, and shop [Tr. 16, 220–22, 322, 384]. The ALJ appropriately considered the inconsistencies between Plaintiff's subjective allegations and the medical evidence when discounting Plaintiff's allegations concerning the severity of his impairments. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("The ALJ reasonably discounted [Plaintiff's] testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record.").

In sum, the Court finds the ALJ provided ample support for his decision to discredit Plaintiff's alleged disabling impairments. The ALJ appropriately articulated how he considered the opinion evidence, Plaintiff's treatment for his impairments, the objective medical record, and inconsistencies within the record. Substantial evidence exists to support the ALJ's analysis and RFC finding. Remand is not warranted on this basis.

**B.  ALJ's Finding that Plaintiff Retained the Ability to Perform Other Work**

Plaintiff claims the ALJ's RFC finding is inconsistent with a finding that he retained the ability to perform other work as identified in the decision [Tr. 19]. Plaintiff argues the ALJ inappropriately relied on the vocational expert's testimony in finding he retained the ability to perform work as a cafeteria helper—one of the two jobs the ALJ relied upon in denying Plaintiff's disability claim. Plaintiff states the ALJ's limitation of only frequent handling is inconsistent with the requirements of a cafeteria helper position as described in the DOT, as it indicates such a job requires the ability to constantly handle. Plaintiff notes the vocational expert testified to there being no inconsistencies between the DOT and her testimony, which was erroneous. Plaintiff therefore contends the ALJ erred by relying on the vocational expert's testimony, as SSR 00-9p requires all inconsistencies between the DOT and the testimony of the vocational expert be resolved by the ALJ.

16

The Court finds Plaintiff has not met his burden to prove that he is disabled. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). "The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *Id.* (citing *Tyra v. Sec'y of Health & Hum. Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)). The ALJ properly relied on the Vocational Expert's testimony as part of the basis for his decision, and he incorporated only those impairments and limitations that were supported by the record into his hypothetical questions. *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014).

In the decision, the ALJ proposed hypothetical questions to the vocational expert that incorporated the same limitations contained in the RFC finding. The vocational expert testified in response to the hypotheticals and stated an individual with the same limitations as those provided in Plaintiff's RFC would be able to perform work as an industrial cleaner, a cafeteria helper, and a laundry folder [Tr. 19, 47–49]. The vocational expert testified her testimony was consistent with the DOT [Tr. 19, 48]. The Court has already determined the ALJ's RFC finding was appropriate in this case, and the ALJ only incorporated the supported limitations as provided in the RFC into his hypotheticals. *See Winslow*, 566 F. App'x at 421 ("The record reflects, however, that the hypothetical questions were proper because the ALJ incorporated all of the functional limitations that she deemed credible.").

Plaintiff's contention that the vocational expert's testimony is inconsistent with the DOT is without merit because the ALJ satisfied his burden to resolve any such conflict by inquiring about potential conflicts with the vocational expert [Tr. 19, 48]. The ALJ satisfied his obligations under SSR 00-4p by asking the vocational expert about any apparent discrepancies between the information provided by the DOT and the vocational expert's testimony. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (stating that there is no requirement for a

"mechanical recitation" of the precise language in SSR 00-4p for purposes of determining whether there are inconsistencies between the DOT and the vocational expert's testimony). In any case, the ALJ relied on the vocational expert's testimony that a person having the limitations provided in Plaintiff's RFC would also be able to perform work as an industrial cleaner—which has approximately 680,000 positions in the national economy. The ALJ has met his burden at step five in the sequential evaluation process to prove Plaintiff can perform other work existing in significant numbers in the national economy.

The Court finds the ALJ's formulation of the final RFC was proper in this case, and the ALJ's concluding that Plaintiff could perform other work existing in significant numbers in the national economy was appropriate. The ALJ's finding Plaintiff not to be disabled under the SSA's rules is supported by substantial evidence.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 14**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

*Jill E. McCook*
Jill E. McCook
United States Magistrate Judge